ANNA O. B. ELLIOTT *vs.* JOHN H. PRAY & others.

If there are two entrances to a store, and there is a trap-door between one of them and the stairs leading to the upper stories, which are verbally leased to a tenant with permission to use such entrance, the owners, who occupy the lower stories, are bound to use the trap-door with reference to the safety of those who have a right to pass there; and if they neglect to exercise suitable and reasonable precautions to guard against accident while the trap-door is open, they may be held liable in damages to a person having lawful occasion to pass to the upper rooms, who, while in the use of due care, falls through the trap-door and sustains injury by reason of their negligence.

If the owners of a store, which is situated upon a public street, have let the upper stories thereof to a tenant, and an entrance, directly in front of the stairs which lead to the upper stories, is so constructed and is so habitually kept open as to indicate that it is a proper entrance for those who have occasion to ascend the stairs, and there is a trap-door between it and the stairs, which is carelessly left open by them, they may be held liable in damages to one who, while in the use of due care, and having lawful occasion to ascend the stairs, is thereby induced to pass through that entrance, and falls through the trap-door and sustains injury by reason of their negligence.

TORT to recover damages for a personal injury sustained by the plaintiff by reason of falling through a trap-door while entering the defendants' building on Summer Street in Boston, on the 7th of October 1863.

At the trial in this court, before *Chapman*, J., a photographic view and a plan of the premises were put into the case, by which it appeared that there were two entrances to the building, one of which was No. 47, and led directly into a room occupied by the defendants for the sale of carpets, and the other, which was called No. 49, though no number was over the door, led into a passage about nine feet wide and ten feet long, which then, after ascending a few steps, extended about six feet further, to the foot of the stairs which led to the upper stories of the building. At

the foot of the main flight of stairs, there was a door opening into the sale room of the defendants; and in the passage between the entrance and the first few steps there was a trap-door, occupying nearly one half of the width of the passage.

George L. Ide, a witness for the plaintiff, testified substantially as follows: " I am a manufacturer of cloaks and mantillas, and occupy the loft over the sale room of the defendants for a workshop. I hired it of the defendants by a verbal lease, and took possession on the 1st of September 1863, and have continued in possession since. The entrance to the shop is at No. 47; I direct people there. I had about one hundred and twenty-five women at work there. My sale room is elsewhere. Miss Warren was my foreman. I do not know whether she had engaged the plaintiff to work for me. No. 47 is through the sale room of Pray & Co. I was to have a right to hoist up and let down goods when Pray & Co. were not using their hoisting tackle, through the lower entrance, called No. 49. The defendants had a right to keep it closed, except as stated. Nothing was said to me about a right to pass through that lower entry, No. 49. I do not know where the general entrance to my room was for girls; I went as often one way as the other. When No. 49 was filled with carpets I went by No. 47. The lower door is sometimes fastened up. They closed the store Saturday afternoons. I hired the porter to keep it open if I wanted it. The lower door was generally open. Two folds of it were generally open, making an opening of from five to seven feet; and one fold closed. I know of no notice being given not to pass that way.

" Cross-examination. There are batten pieces there; a tackle and fall were necessarily there. After passing it you go up four or five steps; then there is a door, which shuts off the passage from them. Nothing was said about this place, except as to my using the hoisting apparatus. I supposed their entrance was at No. 47; I directed people that way; though I recollect Mr. Pray, senior, was opposed to my having the room on account of bringing so many girls through their sale room. They used the hoistway most of the time. I made no request that they should put

up a barrier before the trap-door to protect the passage. **They** have a right to stop the passage when they choose."

The plaintiff testified that on the morning of October 7th 1863 she was going into what she supposed to be Ide's shop; that she had been there once before, and some one in Pray's shop pointed it out as the way. The person appeared to belong there, and went and pointed out the place, and told her to go up stairs, and go as far as she could go. The outside door, No. 49, was then open. She went to call on Miss Holmes, and had made a contract with Miss Warren, through Miss Holmes, to work there. She went down Summer Street, with the sun shining in her eyes, and stepped up from the sidewalk into the passage; then it seemed to be but one step forward; then she fell. She saw no one in the entry, nor below, in the place where she fell. There was nothing to warn her of the trap-door. She was going to her work; and did not recollect any obstructions in the entry. She also testified to her injuries, and on cross-examination said that when she went down the street she had a parasol, but put it down before she got to the regular entrance of the store; she mistook the place. They were not then hoisting goods. She did not notice rope or hoistway or strips of board or battens. She looked for obstructions, and should have seen obstructions, but did not look for a hole in the floor.

Four of the girls employed by Ide testified that the general and ordinary passage was through No. 49, and that when this was obstructed they went through the store, but almost always could get in at No. 49. One of them said that when she first went there she did not know the way, and inquired and was directed by a young man at Pray's desk to No. 49. There was also other evidence as to the amount of the plaintiff's injury, and it was admitted that the condition of the hoistway at the time of the accident was caused by the defendants' servants.

Upon this evidence, with some other which it is unnecessary to recite here, the judge reserved the case, by consent of parties, for the consideration of the whole court, with an agreement that they might draw any inferences, from such of the evidence as was competent, that a jury might; and that if, upon this

evidence and these inferences, a legal cause of action was estab‹ lished, it should be sent to a jury to assess the damages; or if otherwise, that a verdict should be entered for the defendants.

*J. G. Abbott & M. Dyer, Jr.,* for the plaintiff, in addition to cases cited in the argument and opinion in the preceding case, cited *Pickard* v. *Smith,* 10 C. B. (N. S.) 470; *Barnes* v. *Ward,* 9 C. B. 392; *Beardsley* v. *Swann,* 4 McLean, 333; *Beatty* v. *Gilmore,* 16 Penn. State R. 463; *Freer* v. *Cameron,* 4 Rich. L. (S. C.) 228; *Brackett* v. *Lubke,* 4 Allen, 138; *Norwich* v. *Breed,* 30 Conn. 535.

*S. Bartlett,* for the defendants. If the plaintiff can recover in this case, it must be. by reason of some undischarged duty of the defendants to her, arising out of the relations between them which result from the tenancy of her employer, Ide. Under the contract between the defendants and Ide, not only no agreement was made with Ide for the use of the passage as a passage, but the agreed use of it by both parties for hoisting, and the right to keep the door closed except for this use, exclude such agreement. The question then arises whether the defendants had publicly and improperly held it out as a safe, unobstructed private way, to such persons as might have lawful occasion to use it, so that it was the defendants' duty to protect them in such use. On the evidence, the utmost that can be maintained is, that the defendants suffered Ide's servants to pass there without prohibition. A person availing himself of such permission must take his chances of accident. See *Binks* v. *South Yorkshire Railway, &c.* 32 Law Journ. (N. S.) Q. B. 26; *Hounsell* v. *Smyth,* 7 C. B. 'N. S.) 731; *Corby* v. *Hill,* 4 C. B. (N. S.) 556, and cases cited. The plaintiff herself was guilty of such negligence as should de- ʿeat her right of action. *Todd* v. *Old Colony Railroad,* 7 Allen, 207, and cases cited.

BIGELOW, C. J. We are of opinion that this case is a proper one for the consideration of a jury, not on the question of dam- ages only, but also to determine whether the facts are such as to render the defendants liable in this action. As the case stands on the report, we are not prepared to pronounce a decision in favor of either party Some of the essential facts involved in

the issue are in controversy, and the determination of them de-
pends on a variety of circumstances which cannot be intelligently
and satisfactorily considered and applied by the court upon a
case reserved. There are cases, and this seems to us to be one of
them, the decision of which must turn in part on the credibility
of witnesses, as indicated by their appearance and mode of tes-
tifying, and in part on the proper application of facts to the
subject matter which render it peculiarly necessary and proper
that they should be submitted to the judgment of practical men,
in order to arrive at correct and safe results. For this, reason,
we do not deem it expedient to exercise the power reserved to
the court by the assent of the parties, of determining whether,
on the evidence stated in the report, this action can be main-
tained against the defendants.

Upon a new trial, the case will present itself in two aspects.
One question will be, whether the right to use the entry or ves-
tibule leading from the street to the stairway by which access
was gained to the chambers of the building was included in the
verbal lease under which the plaintiff's employer, the witness
Ide, occupied the premises as tenant of the defendants. The
testimony of this witness on this point, as stated in the report,
is exceedingly vague and unsatisfactory. He appears to be an
unwilling witness. He does not state distinctly whether the
right to enter from the street through the place where the acci-
dent happened was included in the demise. All he says on this
point is, that, in making his contract for a lease, nothing was
said between him and the defendants about the right to pass
through the lower entry. He does, however, state that the en-
trance to the shop occupied by him is through the doors of No.
47; that is, through the store on the first story or basement of
the building. And yet he also says that he did not know where
the general entrance was for the girls in his employment, and
that he went as often one way as the other. By the testimony
of the other witnesses in the case, it appears that the general
and ordinary entrance to the upper rooms of the building was
through the entry in question, and that the girls employed by
Ide were in the constant habit of going to the room where they

worked by passing from the street through this entry and thence up the stairway ; and that entrance by any other way was an exception to the general usage.   It also appears that this prac- tice was well known to the defendants and persons in their em- ployment.   In this state of the evidence, taking into consideration the fact that the building was so constructed that access to the chambers was readily gained through the entry in question, which was in fact one of the purposes for which it was designed, we think it was a proper question to be submitted to the jury, whether the right to enter there was not understood by the par- ties to be included in the verbal demise by the defendants to the tenant of the upper rooms.   If this was found in the affirmative, then the rule of law which would govern the case is very plain and simple.   The defendants would be bound to use the trap- door .there situated with reference to the fact that others had a right to pass and repass through the entry in going to and from the upper rooms of the building; and if the defendants were guilty of negligence, either by omitting to stop all passing through the entry while the trap-door was open and they were hoisting goods, or by failing to take any other suitable and rea- sonable precautions to guard against accident, they would be liable in damages to a person having lawful occasion to pass to· or from the upper rooms, who, while in the use of due care, sus- tained injury by reason of their negligence.

There is another view of the evidence on which the plaintiff might be able to satisfy a jury that the defendants ought to· be charged in this action.   It appears by the testimony given at the trial, and by an inspection of a photographic representation· of the premises which has been submitted to us, that the doorway leading to the entry in question is situated in the front line·of a large warehouse on Summer Street; that it is closed by a door with three folds ; that two of these folds were usually turned aside so as to make the entrance from five to seven feet wide ; that when the door is thus opened, a wide staircase is visible, leading to the chambers of the building, and that the entry is about ten feet long from the door to the beginning of the stair- case.   These facts, if uncontradicted, and if there is nothing in

the construction or appearance of the place to control the natural inference from them, would seem to show that the doorway and entry were intended as a proper mode of access to the upper part of the building from the street, and that it was the only direct one, as there was no other entrance except through the warehouse in the lower story ; and that the situation and aspect of this part of the premises were such that they were held out by the defendants as a proper and suitable place for those having lawful occasion to go into the chambers or lofts above to enter for the purpose of ascending the stairs. It also appears that the defendants were cognizant of the fact that the entry was in constant daily use by more than one hundred workwomen, who entered and passed over the place where the trap-door was situated, in order to ascend the stairs to the upper rooms of the building where they were employed. This aspect of the case would seem to bring it within the principle of law fully considered and stated in *Sweeny* v. *Old Colony & Newport Railroad, ante,* 368, whereby a party is held liable in damages to a person injured by a defect or obstruction in a private way or passage into which he has been induced to enter for a lawful purpose by any invitation, allurement or enticement, either express or implied, held out to him by the party sought to be charged. Whether there are facts which ought reasonably to repel the inference arising from those to which we have adverted, and to show that no inducement or invitation of any kind was held out to the plaintiff — such, for example, as the appearance of the entry in question; that it was finished with battens; that chains and ropes were hanging there, and that it was designed for use as a hoisting place only, and not for passing to and fro — is a question which can be best determined by practical men, on a view of all the facts and circumstances bearing on the issue. Upon this part of the case, the proper instructions in matter of law would be substantially these : The warehouse of the defendants being upon a public street in the city, and being used by persons who had lawful occasion to pass from the street to the upper parts of the building, if the doorway and entry where the injury to the plaintiff happened were so constructed as to appear to afford a proper

place for gaining access to the chambers, and they were left open by the defendants in such manner as to be held out to persons having occasion to go into the chambers as a suitable place of entrance thereto, who were thereby induced to enter, the defendants would be liable to any person lawfully passing there under or by reason of such inducement, who was injured in consequence of the carelessness of the servants of the defendants in leaving the trap-door open, whereby such person, using due care, fell and sustained personal injuries. *New trial ordered.*